May it please the Court, Counsel, good morning. My name is Jason Holden and I represent Elwyn Jack Has The Eagle, Sr. I would ask that I be allowed to reserve two minutes for rebuttal. Jack has raised three issues on appeal but primarily focuses today on the District Court's abuse of discretion when it failed to ask any questions and then refused to allow Jack to ask the jury about their knowledge related to the double murder trial of Jack's son, Jay Has The Eagle, Jr. They were advised that there had been a murder trial previously, weren't they? Absolutely, Your Honor. In fact, that's how this issue came up. And that the murder trial involved Jack's son? Yes, Your Honor. They knew that? Not only did they know that, the indictment specifically references the double murder trial of Jay and then the jury charge or the jury instruction given by Judge Haddon actually requires that an official proceeding such as Jay's double murder trial be proven as an element of the offense. And they were asked specifically by the judge, is there anything that you know that would cause you not to be an impartial juror? Not about the double murder trial, Your Honor. Not specifically, but just generally, is there any reason that you could not be an impartial juror in this case? There was a general statement given by Judge Haddon, can you be fair and impartial? And that was asked after they knew about this earlier murder trial? No, Your Honor. I would parse the record a little bit differently, Your Honor. And I would point out, as Baldwin pointed out in quoting the Seventh Circuit decision from Martin, that voir dire is not simply intended to ask a juror whether or not that juror can be fair and then instruct that juror or request that juror to be impartial. What happened here was that Judge Haddon read the indictment. That indictment specifically referenced Jay's double murder trial. Then Judge Haddon said, I'm not asking you about your knowledge related to that case. I'm only asking you about your knowledge related to this case. At that point, Your Honor, there is some additional reference. Was there an objection to that statement? There is not an objection. And, Your Honor, I've tried a number of cases in front of Judge Haddon. If you were to object to his questioning of the jury, that might land you in some hot water. Maybe not an objection to that question, but then there was an effort made to expand that during the voir dire that was allowed to the defense counsel. Absolutely, Your Honor. And I think it's important to point out because, as this Court well knows, the trial court has the right to ask questions and not allow counsel to ask questions. But what we do in Great Falls is Judge Haddon does not require us to submit questions prior to trial. We are allowed approximately 15 minutes of questioning after Judge Haddon has completed his questions. And trial counsel in this case picked up on the notion that Judge Haddon had not questioned the jury on their knowledge of Jay's double murder trial and immediately asked the question. And he put it in context. When Judge Haddon read the charge to you or read the indictment to you, there was a reference to another trial. Have any of you heard about that murder trial? Well, and immediately, and I can tell you that when Judge Haddon uses these words, he means it, he said it's not relevant, counsel, and I made that clear to the jury. At that point. The earlier trial as such was the subject of this trial in great detail. It was the heart of this case, Your Honor. Exactly. So knowledge of the earlier trial couldn't possibly be a reason to take somebody off the jury because the whole trial was going to be put on in this trial. In other words, you were looking for something else. I don't know what you were looking for. But you weren't looking for the question of whether they knew what went on in that trial as external knowledge because what went on in that trial was going to be told to them in great detail anyway. Well, that's right. But that's the point as discussed in Baldwin and as cited in Martin. You're not asking just about knowledge. You're going to ask about prejudice and bias. And that's the whole point of that question, that if the jury had known or if the jury knew about that trial, first of all, Your Honor. How do we know that's the point of that question? In this record, how do we know that's the point of that question? Because the point of the. . . In this record. Don't talk about what you're construing it to be or what you think it ought to have been after. But what do I have in this record to suggest that that's what counsel was after? You have in this record, Your Honor, the question as have any of you heard about the double murder trial? That's all we have, isn't it? And from that point, Your Honor, I think that we are able to make a principled determination based on the case law, beginning with Baldwin and even Jones. We're entitled based on the fact counsel didn't say any more, didn't argue anything, didn't put anything in the record, didn't tell the trial judge, hey, I think you've cut me off when I've got some principled things to talk about. But we're to allow then an appeal on something the trial court never heard about, but somebody comes up with a good reason why that question may have led to something else. We don't even know if counsel wanted to lead to something else. Your Honor, if I may, I've tried cases in front of Judge Haddon for 10 years. If Judge Haddon tells you it's not – I understand you've got a problem with the judge. That doesn't excuse you from making whatever record has to be made. You simply don't have the opportunity at that point, Your Honor, when you're – this is your first impression in front of the jury as counsel. You do not have the opportunity at that point, as Your Honor points out, to make some type of record or some – You don't have the opportunity to ask to approach the bench and on the record approaching the bench say, I would like to make a proffer of what I wanted to ask? Your Honor, the opportunity, based on my experience, and I certainly will allow Mr. Rostad to point out or he may comment, you have a very rare opportunity to have sidebars in Judge Haddon's court. You know, all that may be true and is troublesome, that we have some judges that so intimidate a local bar that they feel constrained. And that is a problem. And I'm sympathetic with that. I'm not unsympathetic at all. The problem is that we don't – can't deal with those nuances in our generic rules that we have to apply. Well, but the question began with how do we know? How do we know that's – It's not so much how do we know. The question you – well, I mean, it gets to that. But the question you asked was something to the effect of do you know about the earlier trial? Well, of course, they've already been told about the earlier trial, so they certainly knew about the earlier trial. Your Honor, but what's important about that question, has anybody heard anything about the underlying case involving Jack's son? That is the exact quote. Has anybody heard anything about the underlying case involving Jack's son? That question, based on this record, was clearly intended to elicit those types of biases and prejudices that Jones talks about as it relates to a double murder trial where the insanity defense was part and parcel. And when the Court takes a look at the actual recordings as it relates to both the obstruction of justice count and the witness tampering counts, those recordings were rife with references to the insanity defense and issues related to Jay's double murder trial. And that question itself leads this Court, based on a principled analysis, not just including Baldwin or Martin, but Jones clearly directs this Court that that line of inquiry was relevant because that's what you have the district court telling both the jury and counsel. It's not relevant, counsel, and I made that clear to the jury. But yet we don't know on this record whether or not some juror had who – it's important to note that Jay's trial was in the same district, in front of the same court. We don't know if a potential juror had already made up his or her mind as it related to Jack's guilt because Jay was guilty of a gruesome double murder. And, Your Honor, by primarily – You didn't ask that question. What's that? You didn't ask that question. Your Honor, I would certainly suggest, Your Honor, that given Judge Haddon's or the district court's conclusion that it's not relevant, counsel – You could have said, would your view of my client's guilt be influenced by the fact that his son was convicted of a double murder? That would have been a question. Well, but, Your Honor, has any – any evidence to support the fact that the insanity defense was used in his son's murder? All – those topics were off the table because Judge Haddon had – We didn't know that they were off the table. Because Judge Haddon had told this jury that Jay's murder trial was not relevant and their knowledge of it wasn't relevant because he told them when he read the indictment itself – He said that's not why I'm asking you. I don't know that he said it wasn't relevant. I'm not asking you about that case. He wasn't asking him. I'm not asking him about that case. That's why it wasn't what he was asking them. But he wasn't telling – if you had come with questions that you say you meant to be asking, we don't even know how he would have ruled. Well, this is the first fundamental question. Has anyone heard about the double murder trial? And Judge Haddon said it's not relevant. And you would expect – and this Court, in order to review an issue like this, would expect counsel at that point to ignore the district court's clear admonition that it's not relevant, and I made that clear to the jury, and then proceed with other questions. But the question was, well – No. I suppose what we would expect A, is either to have asked the real question at the beginning or to go to the judge and say the reason I'm asking this is because it's a predecessor to the following question. But from what you actually asked him, he presumably thought, well, of course they know about it. I just told them about it. What else is there? What's the relevance of this? Well, there's a – there's so many relevant issues as it relates to a double murder trial. So I'm not going to get into that. But I'm going to go to the judge and ask him to come out. And I'm going to ask him to come out afterwards. In any event, Your Honor, your time is up. I see that, Your Honor. Thank you. Good morning again, Your Honors. As I indicated before, I'm Carl Rosted with the U.S. Attorney's Office out of Great Falls representing the United States. I have the fortune this time of actually being trial counsel, so hopefully I can provide some insight as to what occurred. There's no question, as this Court is probably aware, Judge Haddon is an intimidating judge. There is no question. But that doesn't obviate our responsibility as advocates to make a proper record. Rule 51 still requires an objection to be made and a record to be made. Mr. Yellen, who was trial counsel, had various opportunities not only to ask the question differently and try to go forward, but he could – How did he have that opportunity? I mean, when the judge said, I've already ruled on that. It's not relevant. How did he then have the opportunity to go forward? I'm not certain, Your Honor, that he could have at least – What would you have done? I would have tried to ask one more question, even if it would have inspired the Court's ire, but I would have asked, possibly like, would be insanity, defense, is anybody here? At least I would have made a good record, but I couldn't have gone any further. Mr. Yellen quit so quickly that he's – all he's left with us is speculation as to where he was going and what he could do. I also would have not passed the jury for cause. Pardon? It is troublesome to have – There's no question. What's troublesome is to have a situation where a court is being run in such a way that people who want to preserve their legal rights are, they think, perhaps putting their client in jeopardy down the road.  I understand that, Your Honor. That is kind of an implied undercurrent, but that is not in the record. Right. We don't have anything in the record where a counsel said, I would have done more, but I was so intimidated by the judge that I wouldn't do more because it would jeopardize my legal ability to practice before that court. We have nothing like that in the record. Right, Your Honor. And if this is a 2255 action brought by Mr. Hazegel against his trial counsel, I'd be interested to see if his trial counsel, if called on ineffective assistance of counsel, would make that admission. We don't know. Again, we're back to speculation as to where he was going. But I think it's just too easy, in a sense, from Mr. Hazegel's perspective, just to say, well, the judge was mean to me, so we folded our tent and we went home. And we just really don't have any other choice. Judge Haddon, even though he does allow counsel to ask questions, also entertains the submission of written voir dire in his scheduling order. If this had been such an important topic for Mr. Hazegel, I suggest he could have submitted written voir dire questions that touched on this issue, which very well might have led to a 104 hearing where we were not in the presence of the jury to discuss the matter. And as I indicated a little earlier, I think Mr. Yellen had other opportunities. Is that in the record? That Judge Haddon allows written requests for voir dire in advance? It's in the file. You're under a rescheduling order. I don't think it's been attached as part of the supplemental excerpt for record. So that's not in the record? No, it's not. It's not in our record. It's not in your record? It's in the court's record. But on the appellate record, is there anything in the appellate record that shows that Judge Haddon would have entertained or at least allowed the filing of requests for voir dire? No, Your Honor. Like, again, it's not in what's been selected for your review, but it's in the district court's record. But everything that's in the record is in the record. Well, that's – I guess that's what I'm saying. The excerpts are just the excerpts. Right. But they're not what we regard as the record. But if the court went back to the docket, you'd see the scheduling order and the scheduling order. But what was sent up to us as the appellate record, is that in the appellate record that was sent up to us? If you get the whole district court record. And I'm not certain. Was that designated as the appellate record, the whole record? No, Your Honor. Not from the United States. That's the way we do it. I mean, this is not my understanding of the way we do it. The excerpts are excerpts. But the record is the whole record. Everything that is – And that's what I'm saying, Your Honor. Right. That's what I understand. Okay. That's a different approach than we take. Yeah. Yeah. We have a different approach. Okay. Let me offer that, Your Honor, that that was an opportunity. Again, we get back to Mr. Holden on appeal makes this – makes it so seminal of the world, so terribly, terribly important, but it's missing from any pretrial discussion, either in the submission of ordered questions or brought up in any other manner, such as a request for 104. It is – it is not brought up again by Mr. Yellen at any time after the question is asked. When the judge asks him, do you pass the jury for cause, he makes no comment about, Your Honor, I don't believe I can pass this jury for cause. I think we have to discuss this issue about the other case. In a sense, like I said, he folded his tent so quickly, all we're left with is speculation on what it would do. Now – Can I change the subject a little, too? Oh, certainly, Your Honor. There's a sufficiency question here, and the part I didn't understand was this. There was a lot of emphasis put on the trial as to whether there was a threat, but your ultimate position on appeal is it didn't matter. Am I right about that? You are.  Pardon me? The defendant's response is, well, if it didn't matter, why did you make such a fuss about proving there was a threat? So it's a little confusing as to – I don't know that we did make such a fuss that it was a threat. We – you can see, by the way, we wrote the indictment that we never alleged that there was threat. What was – there was testimony that there was a threat, but it wasn't in the two phone calls. It was on the night before – the Saturday before the trial, and that is the testimony of the FBI victim witness specialist and the witness. So your considered view is it doesn't matter? No. It was – Either of the counts. Either. Either. It also gets conflated, Your Honor, in the sentencing issue, because there was an eight-level enhancement for threat of the use of force, which was applied. That became academic as well under the guidelines. So maybe that's where the idea that it was a threat became important at sentencing. But at the trial, it didn't matter to us. Okay. Again, Your Honor, I would like to get back to just one point, and then I'll certainly ask – answer any questions the Court has. But we do not consider this to be an abuse of discretion case. We consider it to be a plain error case. In his – in the reply brief, Mr. Hazegel indicates that I don't have to object, I don't have to make a record. I merely asked the question and was told I couldn't ask it, and thinks that that's objection. The United States says that doesn't affect Rule 51. You still had to make a record. You still had to make a contemporary subjection to give the Court the opportunity to reconsider. Now, Mr. Holden and I could get up here and tell this Court that Judge Haddon just won't simply reconsider, but that is unfair to Judge Haddon. Who knows what he could have done if he'd thought about it, given it some thought and a proper objection and a proper argument made. I don't understand why you're better off with an abusive – a plain error standard than an abuse of discretion standard, particularly. Plain error. I'm not certain that it affected the outcome. I mean, the substance of the outcome. Well, if you have the outcome, then you're not going to get any abuse – that's not going to be an abuse of discretion either. So I don't understand what the difference is. Well, maybe it's academic, Your Honor, possibly. But process is important. It might in some case make a difference. Your Honors, again, I think that the case against Jackett that has the eagle on all of the issues raised in the appeal, it was a sound prosecution and a sound judgment verdict and sentence. And so with that, unless there are other questions, I'll, again, thank you. Thank you very much. We can give you a minute of rebuttal, if you like. Yes. I want to make myself clear as it relates to the issue that Your Honor raised regarding what do we have on this record. The point that I was making as it relates to the district court and the opportunity to object or not object was that you don't have the opportunity to approach the bench and make such a foundational objection. But that really misses the point. Under the controlling case law, whether it be Jones or Baldwin or Allsup, all that a trial counsel needs to do is either request the question to be asked and have it rejected by the court. But the problem here isn't that you needed to do more in terms of objection. The problem is that from the question you asked, one can't see any problem. You're saying, but there were other questions down the line, and the problem is that we don't have any indication that there were other questions. Yes, but, Your Honor, I think that really misses the point because the question was have any of you heard about the underlying murder case? And what we have to recognize is that the very basis of voir dire is to ferret out prejudice and bias. But that question wouldn't – that question by itself would not have ferreted out bias. Yes, it would have because it would have identified potential jurors had heard about the case. Excuse me, but they all heard about the case because they heard it better from the judge. No, they didn't, Your Honor, because the judge didn't allow them to tell him whether or not they had – But they heard about it. He told them I – there was an underlying murder trial. No, Your Honor. I think that we have to look at the record. The district court said I'm not asking you about whether you've heard about that case. Well – That is what the district court said. You're not really answering my question. My question was accorded to this. In general, federal judges have been accorded ample discretion in determining how best to conduct a voir dire. That's correct. And under Jones, it may refuse to answer voir dire questions that are tied to prejudice only speculatively. That's correct, Your Honor. And so at this point, not knowing where that one question is going, not knowing where it is going or what is being happened there, it's hard for me to suggest that that's not just speculation, except that you want to explain it to me as you suggest it. If somebody were to put it in the record, I'd know where it was going, and it wouldn't be speculation. I wouldn't need you to come up with your best idea about what it was or it wasn't. I wouldn't need anybody. If somebody just put it in the record. And I guess I'm an old trial lawyer myself. I had judges just like Judge Haddon. He's an Idaho, Montana judge, hard nose. But even in those circumstances, I made a record. I made a record. Even if the judge was going to come over the top of me and say you're out of it and I'm mad at you and I'm mad at my client, nonetheless, I had a record. If I may, Your Honor, I think that question is answered by looking at Baldwin. Look at what Baldwin dealt with. That case dealt with whether or not the jury was allowed to answer a question related to whether or not they knew of government agents or had involvement with that or knew of any of the witnesses in the case. That is the same type of baseline question that is at issue in this case. Have any of you heard about the underlying murder trial? That's the same type of baseline question that this Court overturned that broad abuse of discretion standard in Baldwin. Because as this Court knows, if you're in front of a trial judge and you're in front of a jury, you need to have the basic question answered first to open up the opportunity for bias and prejudice. And that's what this question really is. Have any of you heard about it? Yes. That's what Baldwin dealt with. And the district court would ---- I hear you. I hear your answer. But you're overtime now, so I know what your answer is. Thank you. I really appreciate the opportunity, and I'm sorry that I'm overtime. Thank you, Your Honors. Thank you very much. Thank you both for your argument. The case, United States v. Hess v. Eagle Sr. is submitted. The next case, NLRB v. Fred Meyer Storrs, was submitted under briefs. And so we are up to the last case of the day and the last case of the week. Jones-Stiridor and Company v. Paglia.
judges: Ebel, Berzon, Smith